UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HOUSTON CASUALTY CO.,

                Plaintiff,

       -against-

ACCREDITED SURETY & CASUALTY CO., INC.,
and SOUTHWEST MARINE & GENERAL
INSURANCE CO.,

                Defendants,
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-5572-SJB

**BULSARA, United States Magistrate Judge:**

       This case arises out of a personal injury lawsuit currently pending in New York State Supreme Court, Bronx County. *Ordonez v. ICL Nevins Street Housing Development Fund Corp., et al.*, No. 20852/2020E (N.Y. Sup. Ct. Sept. 11, 2020); (Compl. dated Sept. 19, 2022 ("Compl."), Dkt. No. 1 ¶ 13). In state court, Bryan Ordonez ("Ordonez") alleged he was injured while working at a Brooklyn construction site. (State Court Compl. dated Jan. 17, 2020 ("State Court Compl."), attached as Ex. 1 to Decl. of Jan H. Duffalo in Supp. of HCC's Mot. for Summ. J. dated Apr. 27, 2023 ("Duffalo Decl."), Dkt. No. 30-1). Ordonez sued ICL Nevins Street Apartments L.P., ICL Nevins Street Housing Development Fund Corporation, the Institute for Community Living, Inc. (collectively, "ICL"), the owners of the property; Mega Contracting Group, LLC ("Mega"), the general contractor at the site; and Celtic Services NYC, Inc. ("Celtic"), the demolition subcontractor at the site. (*Id.*). This initial suit spawned a flurry of cross and counterclaims in state court, including against Republic Scaffold & Hoist Corp. ("Republic"), the scaffolding installation subcontractor. (*See* Compl. ¶ 13).

Mega, Celtic, and Republic each have a commercial general liability policy from different insurance companies.  (Mega Policy, attached as Ex. 10 to Compl., Dkt. No. 1-10; Celtic Policy, attached as Ex. 8 to Compl., Dkt. No. 1-8; Republic Policy, attached as Ex. 9 to Compl., Dkt. No. 1-9).  The issue before this Court is which insurance company had and continues to have the duty to defend ICL and Mega in the underlying personal injury suit.  The only parties to this federal case are the three insurance companies: Plaintiff Houston Casualty Company ("HCC" or "Plaintiff"), the insurer of Mega (the general contractor); Defendant Accredited Surety and Casualty Company ("Accredited"), the insurer of Celtic (the demolition subcontractor); and Defendant Southwest Marine and General Insurance Company, ("Southwest Marine," collectively "Defendants"), the insurer of Republic (the scaffolding subcontractor).  (*See* Compl.).

HCC filed this action seeking a declaration that Accredited and Southwest Marine have a duty to defend and indemnify ICL and Mega in the state court personal injury lawsuit.  (*Id.*).  In response, Accredited filed cross-claims against Southwest Marine, (Accredited Answer to Compl. dated Nov. 4, 2022 ("Accredited Answer"), Dkt. No. 19), and Southwest Marine filed cross-claims against Accredited.  (Southwest Marine Answer to Compl. dated Nov. 4, 2022 ("Southwest Marine Answer"), Dkt. No. 18).  The cross-claims attempt to clarify—as between Southwest Marine and Accredited—who has the obligation, if it exists, to defend and indemnify ICL and Mega.

HCC has moved for summary judgment.[1]  (Pl.'s Mot. for Partial Summ. J. dated Apr. 27, 2023 ("HCC's Mot. for Summ. J."), Dkt. No. 28; Mem. of Law in Supp. of HCC's

---

[1] HCC filed a letter requesting oral argument on the motion.  (Letter Requesting Oral Argument dated Sept. 11, 2023, Dkt. No. 53).  The Court denies that request, finding argument unnecessary.

Mot. for Summ. J. dated Apr. 27, 2023 ("HCC Mem. of Law"), Dkt. No. 32).  Both

Accredited and Southwest Marine filed cross-motions for summary judgment on their

cross-claims.  (Notice of Mot. for Summ. J. dated June 28, 2023 ("Accredited's Mot. for

Summ. J."), Dkt. No. 34; Accredited's Mem. of Law in Opp'n to HCC's Mot. for Summ. J.

and in Supp. of Accredited's Mot. for Summ. J. ("Accredited Opp'n to HCC & Mem. of

Law"), Dkt. No. 37; Cross Mot. for Summ. J. by Southwest Marine dated June 28, 2023

("Southwest Marine Opp'n to HCC & Mem. of Law"), Dkt. No. 39).  For the reasons

stated below, HCC's motion is granted in part; Accredited's motion is denied; and

Southwest Marine's motion is denied.

STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v.

Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary

judgment is appropriate, [the Court] must resolve all ambiguities and draw all

reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434

(2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)).

"Cross-motions for summary judgment do not alter the basic standard, but

simply require the court to determine whether either of the parties deserves judgment as

a matter of law on facts that are not in dispute."  *AFS/IBEX v. AEGIS Managing Agency*

*Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021).  Accordingly, "a district court is not required to grant judgment as a matter of law for one side or the other."  *Id.* (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  The Court must examine each party's motion and draw all reasonable inferences against the party whose motion is under consideration.  *Id.*

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered

paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

This action arises from a construction accident that allegedly occurred at 50 Nevins Street, Brooklyn, New York (the "Project Site"), on December 12, 2019, that resulted in injuries to Ordonez.  (HCC's 56.1 Stmt. of Material Facts dated Apr. 27, 2023 ("HCC 56.1 Stmt."), Dkt. No. 29 ¶ 9, 15; Accredited's Resp. to Pl.'s 56.1 Stmt. of Material Facts & Rule 56.1 Stmt. of Material Facts in Supp. of its Cross Mot. dated June 28, 2023 ("Accredited Counter 56.1 Stmt."), Dkt. No. 35 ¶ 9, 15; Southwest Marine's 56.1 Stmt. of Material Facts in Supp. of its Cross Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J. dated June 28, 2023 ("Southwest Marine Counter 56.1 Stmt.", Dkt. No. 38 ¶ 9; State Court Compl.).  ICL is the owner of the Project Site, and Mega was the general

contractor.  (Accredited Counter 56.1 Stmt. ¶ 10–11; Southwest Marine Counter 56.1 Stmt. ¶ 11; HCC 56.1 Stmt. ¶ 10–11).[2]  Mega retained two subcontractors: Republic to perform scaffolding work, (*id*. ¶ 14; Accredited Counter 56.1 Stmt. ¶ 14), and Celtic to perform demolition work.  (*id*. ¶ 12; HCC 56.1 Stmt. ¶ 12; Southwest Marine Counter 56.1 Stmt. ¶ 12).  Celtic, in turn, subcontracted with White Star NYC, Inc. ("White Star") to perform its demolition duties.  (*Id*.; HCC 56.1 Stmt. ¶ 13; Accredited Counter 56.1 Stmt. ¶ 13).

Per the subcontractor agreements, both Celtic and Republic agreed to obtain Commercial General Liability ("CGL") insurance.  (*Id*. ¶ 40, 46; HCC 56.1 Stmt. ¶ 40, 46; Southwest Marine Counter 56.1 Stmt. ¶ 39, 45).  The contracts required Celtic and Republic to name both ICL and Mega as additional insureds on their CGL policies and to defend and indemnify ICL and Mega.  (*Id*. ¶ 40–42, 46–48; HCC 56.1 Stmt. ¶ 41–43, 47–49; Accredited Counter 56.1 Stmt. ¶ 41–43, 47–49).

Celtic obtained a CGL policy from Accredited, and Republic obtained one from Southwest Marine.  (*Id*. ¶ 51, 57; HCC 56.1 Stmt. ¶ 51, 57; Southwest Marine Counter 56.1 Stmt. ¶ 50, 56).

A. The Accredited Policy Issued to Celtic

Accredited issued Policy No. 1-TPM-NY-17-01234898 to Celtic effective May 1, 2019, to May 1, 2020.  (HCC 56.1 Stmt. ¶ 51; Accredited Counter 56.1 Stmt. ¶ 51;

---

[2] The Court does not find a genuine issue of fact in dispute where a party says only that a piece of evidence speaks for itself or that a party's assertion is "improper legal argument."  (*See, e.g*., Southwest Marine Counter 56.1 Stmt. ¶¶ 26–27, 32–33, 38–39, 41–46, 49–50, 52–54, 58–60, 64, 71, 73–74).  If one side's citation is omitted, the Court has concluded that the party's proposed 56.1 Statement failed to demonstrate an actual material fact in dispute.

Southwest Marine Counter 56.1 Stmt. ¶ 50).  In relevant part, the Accredited Policy

provides:

>   a. We will pay those sums that the insured becomes legally obligated to pay
>      as damages because of "bodily injury" or "property damage" to which
>      this insurance applies.  We will have the right and duty to defend the
>      insured against any "suit" seeking those damages . . . . [W]e will have no
>      duty to defend the insured against any "suit" seeking damages for
>      "bodily injury" or "property damage" to which this insurance does not
>      apply[.]
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>      (1) The "bodily injury" or "property damage" is caused by an
>          "occurrence" that takes place in the "coverage territory";
>      (2) The "bodily injury" or "property damage" occurs during the policy
>          period [.]

(*Id.* ¶ 52; Accredited Counter 56.1 Stmt. ¶ 53; HCC 56.1 Stmt. ¶ 53; Accredited Policy

("Accredited Policy"), attached as Ex. 16 to Duffalo Decl., Dkt No. 30-16 at

ASCI000089).

Under the Accredited Policy, an additional insured includes any party that is

required to listed as one by any agreement with Celtic, and only applies if the injury

occurs before Celtic's work is completed.  (HCC 56.1 Stmt. ¶ 55; Accredited Counter 56.1

Stmt. ¶ 55; Southwest Marine Counter 56.1 Stmt. ¶ 54; Accredited Policy at

ASCI000101).

## B. The Southwest Policy Issued to Republic

Southwest Marine issued CGL Policy No. GL201900012552 to Republic effective

August 17, 2019, to August 17, 2020.  (HCC 56.1 Stmt. ¶ 57; Accredited Counter 56.1

Stmt. ¶ 57; Southwest Marine Counter 56.1 Stmt. ¶ 56).  Southwest Marine's Policy is

almost identical to that of Accredited:

>   a. We will pay those sums that the insured becomes legally obligated to pay as
>      damages because of "bodily injury" or "property damage" to which this

insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result[.]

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period[.]

(HCC 56.1 Stmt. ¶ 59; Accredited Counter 56.1 Stmt. ¶ 59; Southwest Marine Counter 56.1 ¶ 58; Southwest Marine CGL Policy ("Southwest Marine Policy"), attached as Ex. 17 to Duffalo Decl., Dkt No. 30-17 at SWM0058).

The Southwest Marine Policy covers additional insureds when required to by any contract with Republic, and only applies if the injury occurs before Republic's work is completed.  (HCC 56.1 Stmt. ¶ 61; Accredited Counter 56.1 Stmt. ¶ 61; Southwest Marine Counter 56.1 Stmt. ¶ 60; Southwest Marine Policy at SWM0067).

C.  The HCC Policy Issued to Mega

HCC issued CGL Policy No. H17PC30917-00 to Mega effective December 28, 2017, through December 28, 2022.  (HCC 56.1 Stmt. ¶ 63; Accredited Counter 56.1 Stmt. ¶ 63; Southwest Marine Counter 56.1 ¶ 62).  The HCC Policy applies as excess coverage if there are any other policies providing primary insurance to Mega, and that where it is the excess insurer, HCC has no duty to defend Mega.  (*Id.* ¶ 64; HCC 56.1 Stmt. ¶ 65; Accredited Counter 56.1 Stmt. ¶ 65; HCC CGL Policy ("HCC Policy"), attached as Ex. 18 to Duffalo Decl., Dkt. No. 39-18 at HCC00426).  The Policy provides that HCC will defend Mega if no other insurer does so, but HCC will be able to enforce

9

Mega's rights against such insurers.  (HCC 56.1 Stmt. ¶ 65; Accredited Counter 56.1 Stmt. ¶ 65; Southwest Marine Counter 56.1 Stmt. ¶ 64; HCC Policy at HCC00426).

D. <u>State Court Action</u>

Ordonez was employed by White Star as a demolition laborer at the time of the accident, which took place on December 12, 2019.  (HCC 56.1 Stmt. ¶ 15–16, 23; Accredited Counter 56.1 Stmt. ¶ 15–16, 23; Southwest Marine Counter 56.1 Stmt. ¶ 15–16, 23).  Ordonez alleges that he fell at the Project Site because of improper or unsecured flooring and the presence of construction material.  (*Id.* ¶ 24–25; HCC 56.1 Stmt. ¶ 24–25; Accredited Counter 56.1 Stmt. ¶ 24–25).  Ordonez claimed injuries to both knees, his lower back, left shoulder, and cervical spine.  (*Id.* ¶ 30; HCC 56.1 Stmt. ¶ 30; Southwest Marine Counter 56.1 Stmt. ¶ 29).

In his state court complaint, Ordonez alleged negligence and violations of the New York Labor Law ("NYLL") by ICL, Mega, and Celtic.  (*Id.* ¶ 18; HCC 56.1 Stmt. ¶ 18; Accredited Counter 56.1 Stmt. ¶ 18).  ICL, Mega, and Celtic then each filed a third-party complaint against Republic, alleging Ordonez's injuries were caused by Republic.  (*Id.* ¶ 19–21; HCC 56.1 Stmt. ¶ 19–21; Southwest Marine Counter 56.1 Stmt. ¶ 19–21).  Mega also filed a third-party complaint against Celtic, alleging that Ordonez's injuries were caused by Celtic, and that Mega is entitled to common law and contractual indemnification from Celtic.  (*Id.* ¶ 22; HCC 56.1 Stmt. ¶ 22; Accredited Counter 56.1 Stmt. ¶ 22).

HCC is currently defending Mega in the state personal injury action.  (*Id.* ¶ 72; HCC 56.1 Stmt. ¶ 72; Southwest Marine Counter 56.1 Stmt. ¶ 71).  ICL, Republic, Celtic, and Mega have each moved for summary judgment on all claims and cross-claims in the state action.  (ICL's Notice of Mot. dated Nov. 14, 2023, *Ordonez,* No. 20852/2020E,

NYSCEF Dkt. No. 123; Republic's Notice of Mot. dated Nov. 14, 2023, *id.* at 132; Celtic's Notice of Mot. dated Nov. 14, 2023, *id.* at 159; Mega's Notice of Mot. dated Nov. 14, 2023, *id.* at 193).  The court held a hearing on these motions on July 31, 2024, and the motions remain pending.  (Hearing dated July 31, 2024, *Ordonez*, No. 20852/2020E, Appearance Information).

HCC denied coverage to ICL; ICL then commenced a declaratory judgment action against HCC and Mega in state court, seeking a declaration that HCC must defend and indemnify ICL.  (Accredited Counter 56.1 Stmt. ¶ 76–77; Pl. HCC Resp. to Def. Accredited's Counter 56.1 Stmt. dated Aug. 2, 2023 ("HCC Counter 56.1 Stmt."), Dkt. No. 45 ¶ 76–77).  Accredited included a copy of the declaratory judgment complaint as an exhibit to its motion in this case.  (ICL State Court Decl. J. Summons & Compl. dated Oct. 14, 2022 ("State Court Declaratory Judgment Complaint"), attached as Ex. K to Decl. of Joanna M. Roberto dated June 28, 2023, Dkt. No. 36-13).  None of the parties dispute that this state court declaratory judgment action was started or argue that the complaint attached by Accredited is not the relevant pleading.  In that complaint, ICL sued Mega and HCC.  (*Id.*).  ICL seeks a declaration that HCC and Mega are obligated to defend and indemnify ICL in the state court personal injury action brought by Ordonez. (*Id.* ¶¶ 18–27).  The insurance contract issued by HCC, on behalf of Mega—which is the same HCC Insurance Policy as in this litigation—is attached to the State Court Declaratory Judgment Complaint.  (HCC Policy, attached as Ex. C to Compl, *ICL Nevins St. Hous. Dev. Fund Corp. et al v. Mega Contracting Group LLC et al*, No. 653815/2022, NYSCEF Dkt. No. 4 (N.Y. Sup. Ct. Oct. 14, 2022)).  That case remains pending in New York State Supreme Court, New York County.  *ICL Nevins St. Hous. Dev. Fund Corp.*, No. 653815/2022.

Ultimately, the parties in the case before this Court are: HCC (insurer to Mega), Accredited (insurer to Celtic), and Southwest Marine (insurer to Republic). The relationships among the parties in this case and the state court personal injury action are reflected in the following chart:



HCC seeks a declaration that: (1) ICL and Mega are additional insureds under the Accredited and Southwest Marine Polices, (Compl. ¶ 83(a),(e)); (2) Accredited and Southwest Marine are obligated to defend ICL and Mega in the personal injury action, (*id.* ¶ 83(b),(f)); (3) HCC is entitled to withdraw its defense of Mega, (*id.*); (4) Accredited

and Southwest Marine are obligated to indemnify ICL and Mega in the personal injury action, (*id.* ¶ 83(c),(g)); and (5) HCC is entitled to reimbursement from Accredited and Southwest Marine, including interest, from having to defend Mega to-date.  (*Id.* ¶ 83 (d),(h)).

In its Answer, Accredited seeks a declaration that it did not owe a duty to defend or indemnify Mega and that Southwest Marine owed primary and non-contributory coverage to Mega instead.  (Accredited Answer at 14).  Southwest Marine asserted cross-claims against Accredited, claiming that any obligation imposed on Southwest Marine to defend or indemnify Mega is borne by Accredited and demanding contributions from Accredited.  (Southwest Marine Answer at 14–15).

Currently before the Court are all three parties' motions for summary judgment. HCC moves for summary judgment and seeks a declaration that Accredited and Southwest Marine have a duty to defend ICL and Mega, that HCC may withdraw from Mega's defense, that Accredited and Southwest Marine must reimburse HCC for the costs incurred in defending Mega, and that the ICL entities are entitled to contractual indemnification from Celtic and Republic through the Accredited and Southwest Marine Policies.  (HCC Mem. of Law at 18).  HCC does not move for summary judgment on its claim that Accredited and Southwest Marine have a duty to indemnify Mega.  (*See* HCC Mem. of Law at 15–18 (seeking a declaration that Accredited and Southwest Marine have a duty to indemnify ICL)); *see* HCC Opp'n & Counter Mem. of Law ("HCC Opp'n") dated Aug. 2, 2023, Dkt. No. 47 at 9–13 (arguing Defendants have a duty to indemnify ICL)).  Accredited moves for summary judgment on its cross-claim against Southwest Marine, seeking a declaration that Southwest Marine has a duty to defend ICL and Mega.  (Accredited Opp'n to HCC & Mem. of Law at 1).  And Southwest Marine moves

for summary judgment seeking a declaration that it has no duty to defend or indemnify ICL or Mega and dismissing HCC's claims and any cross-claims asserted against it. (Southwest Marine Opp'n to HCC & Mem. of Law at 20–21).

The Court addresses each party's motion in turn.

<u>DISCUSSION</u>

I.   <u>Plaintiff HCC's Partial Motion for Summary Judgment</u>

In its motion for partial summary judgment, HCC seeks a declaration that: (1) ICL is entitled to contractual indemnification from Celtic and Republic, based on the Celtic and Republic subcontracts; and (2) Accredited and Southwest Marine have a duty to defend ICL and Mega.  (HCC Mem. of Law at 18).

1.   <u>HCC Cannot Seek Relief for or about ICL</u>

HCC cannot seek declaratory relief on behalf of ICL.  HCC is representing Mega, not ICL, in the underlying case.  (HCC 56.1 Stmt. ¶ 72; Accredited Counter 56.1 Stmt. ¶ 72; Southwest Marine Counter 56.1 Stmt. ¶ 71).  And HCC has not asserted any basis— via a particular insurance contract provision or separate delegation of rights—that it may assert the rights of or seek relief on behalf of ICL.  While it baldly asserts it has standing, (HCC Opp'n at 13), HCC cites no case or other legal authority for asserting the rights of a third-party here.[3]

---

[3] HCC argues that the suit is proper without ICL as a party, because "the insured and other insurers who may owe coverage are not necessary parties."  (HCC Opp'n at 13–14).  HCC's point is correct but irrelevant: "[t]he insured need not be joined in a declaratory-judgment action between two insurers to determine their respective liability[.]"  *Liberty Mut. Ins. Co. v. Sterling Ins. Co.*, No. 19-CV-3374, 2020 WL 6699872, at *2 (E.D.N.Y. Nov. 12, 2020).  But ICL is not the insured of any party in this litigation.  HCC has not alleged that ICL is its insured, and it is not defending ICL in the underlying action.

Underscoring the impropriety of HCC's position, ICL has filed *its own* action in state court, adverse to HCC.  In that action, ICL asserts that HCC and Mega have an obligation to indemnify and defend it.  (State Court Declaratory Judgment Action ¶ 62). HCC has answered and filed third-party complaints against Accredited and Southwest Marine, claiming that they, not HCC, have a duty to defend and indemnify ICL.  (*ICL Nevins St. Hous. Dev. Fund Corp.*, No. 653815/2022, Dkt. Nos. 10, 20).  To decide here that HCC has no obligation to defend ICL, or that Accredited and Southwest Marine have a duty to defend ICL, would adjudicate the rights of ICL in absentia—since it has been given no notice or opportunity to participate in this lawsuit.

But even if the Court ignored the threshold standing and due process questions, the Court dismisses any claim by HCC on behalf of or related to ICL on abstention grounds.  "To avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (quotations omitted); *see also Gustavia Home LLC v. VVS1 Corp.*, 805 Fed. App'x 82, 83 (2d Cir. 2020) ("Under the abstention doctrine laid out in *Brillhart*, and further developed in *Wilton*, district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." (quotations omitted)).  The issues and claims in the underlying case brought by ICL against HCC—an action seeking a declaration that HCC and Mega are obligated to defend ICL (under the same policy no less) and where HCC filed third-party complaints against Accredited and Southwest Marine seeking a declaration that they have a duty to defend and indemnify ICL—are the same issues that HCC now seeks to resolve here.  (*See* State Court Declaratory Judgment Complaint ¶ 62;

Third Party Compl. against Accredited and Southwest Marine, *ICL Nevins St. Hous. Dev. Fund Corp.*, No. 653815/2022, Dkt. No. 20).  The issues of HCC, Accredited, and Southwest Marine's obligations and duties to ICL are best resolved in state court, where ICL is present and actively litigating.

    2.  <u>Accredited and Southwest Marine Have a Duty to Defend Mega</u>

"In New York, an insurer's duty to defend is exceedingly broad and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quotations omitted).  "[A]n insurer may be required to defend . . . even though it may not be required to pay once the litigation has run its course." *Id.* (quotations omitted).  "An insurer may refuse to defend only if it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." *CGS Indus. Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (quotations omitted) (emphasis added).  And so "[a]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." *Euchner-USA, Inc.*, 754 F.3d at 141 (quotations omitted).  The underlying complaint need only "suggest a reasonable possibility of coverage" for the insurer to be required to provide a defense.  *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020).

    A.  <u>Accredited Has a Duty to Defend Mega</u>

HCC argues that the allegations in the underlying action trigger Accredited's duty to defend its insured, Mega, in the underlying suit.  (HCC Mem. of Law at 6).  Accredited contends that there are no specific allegations that its insured, Celtic, proximately

caused Ordonez's injuries.  (Accredited Opp'n to HCC & Mem. of Law at 8–9).

Accredited's argument has no merit.

Accredited's Policy lists Mega as an additional insured, (HCC 56.1 Stmt. ¶ 42;

Accredited Counter 56.1 Stmt. ¶ 42), "with respect to liability for 'bodily injury', . . .

caused, in whole or in part by . . . [Celtic's] acts or omissions; or . . . acts or omissions of

those acting on [Celtic's] behalf."  (*Id.* ¶ 55; HCC 56.1 Stmt. ¶ 55).  This language triggers

a defense obligation from Accredited, Celtic's insurer, to Mega so long as there is a

reasonable probability that Celtic caused Ordornez's bodily injuries.  *See Liberty Mut.*

*Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 271 (S.D.N.Y.

2020)

Ordonez's complaint suggests a reasonable possibility that Celtic's conduct was a

proximate cause of his injuries.  As a basic matter, Celtic is named as a defendant in the

case.  (HCC 56.1 Stmt. ¶ 18; Accredited Counter 56.1 Stmt. ¶ 18; Southwest Marine

Counter 56.1 Stmt. ¶ 18; State Court Compl.).  Ordonez alleges that on December 12,

2019, he "tripped and/or slipped and fell and was caused to sustain serious and

permanent injuries . . . caused solely by and through the negligence of the defendants

herein[.]"  (State Court Compl. ¶¶ 104–05).  These allegations are directed toward all

defendants, including Celtic.  (*See generally id.*).  Ordonez also alleges that the

defendants, including Celtic, "negligently, carelessly and recklessly, failed and omitted

to properly construct, shore, equip, guard, arrange, operate and conduct the

construction activities at the construction site[.]"  (*Id.* ¶ 107(a)).  Because Ordonez's

complaint alleges bodily injury proximately caused by Celtic, given the clear language of

Accredited's Policy, which obligates Accredited to defend Mega for any personal injury

caused by Celtic, HCC is entitled to summary judgment on this defense claim.  *See, e.g.*,

*Liberty Mut. Ins. Corp.*, 505 F. Supp. 3d at 271 (finding insurer had a duty to defend an additional insured where: (1) the policy provided coverage to the additional insured for bodily injury caused, in whole or in part, by its insured; (2) its insured was a defendant; (3) the underlying complaint alleged the insured "was engaged to perform certain construction and/or rehabilitation work" at the building site; and (4) plaintiff's injuries were caused by the negligence of defendants).

### B. Southwest Marine Has a Duty to Defend Mega

HCC separately contends that Southwest Marine also has a duty to defend Mega as an additional insured.  (HCC Mem. of Law at 9–11).  Southwest Marine argues in opposition that HCC's motion is premature and more discovery is needed.  (Southwest Marine Opp'n to HCC & Mem. of Law at 15–16).  In the alternative, it argues that there is nothing suggesting its insured, Republic, which was only installing scaffolding at the site, proximately caused Ordonez's injuries.  (*Id.* at 17–20).

Southwest Marine's Policy triggers an obligation to additional insureds (like Mega) "only with respect to operations performed by [Republic]."  (HCC 56.1 Stmt. ¶ 61; Accredited Counter 56.1 Stmt. ¶ 61; Southwest Marine Counter 56.1 Stmt. ¶ 60; Southwest Marine Policy at SWM0067).  And the policy provides coverage "with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [Republic's] acts or omissions . . . in the performance of [Republic's] ongoing operations for the additional insured(s)."  (*Id.*; HCC 56.1 Stmt. ¶ 61).  The policy also contains an exclusion: the insurance does not apply to bodily injury occurring after "[a]ll work, including materials, parts or equipment furnished in connection with such work, on the project . . . has been completed[.]"  (*Id.;* Southwest Marine Policy at SWM0067).

Unlike Celtic, Republic is not a named defendant in the underlying action. (*See* State Court Compl. at 2). The state court complaint does not suggest that Republic proximately caused Ordonez's injuries; there is no mention of Republic, its acts, or even scaffolding in that complaint. (*See generally* State Court Compl.).

Though not in the initial complaint, Republic was brought into the lawsuit by the other parties. ICL, Mega, and Celtic each filed a third-party complaint against Republic, alleging that Ordonez's injuries were caused by the negligence and carelessness of Republic. (HCC 56.1 Stmt. ¶¶ 19–21; Accredited Counter 56.1 Stmt. ¶¶ 19–21; Southwest Marine Counter 56.1 Stmt. ¶¶ 19–21). ICL alleges that Ordonez "was injured as the result of a dangerous and defective scaffold," and that his injuries were caused by Republic's negligence. (ICL Third-Party Compl. dated Mar. 17, 2022 ("ICL Third-Party Compl."), attached as Ex. 3 to Duffalo Decl., Dkt. No. 30-3 ¶¶ 16, 19). Mega similarly alleges that any injury was caused by Republic's "active and affirmative wrongdoing[.]" (Mega Third-Party Compl. dated Nov. 30, 2022 ("Mega Third-Party Compl."), attached as Ex. 4 to Duffalo Decl., Dkt. No. 30-4 ¶ 8). So does Celtic, which alleges that any injuries were caused by Republic's "negligence and carelessness." (Celtic Third-Party Compl. dated Dec. 10, 2021 ("Celtic Third-Party Compl."), attached as Ex. 2 to Duffalo Decl., Dkt. No. 30-2 ¶ 8).

Ordonez's Bill of Particulars states that "[t]he accident occurred on an external scaffold" at the Project Site. (Ordonez Bill of Particulars to Republic dated June 1, 2022 ("Republic BOPs"), attached as Ex. 7 to Duffalo Decl., Dkt. No. 30-7 ¶ 3). And it is undisputed that Republic was providing scaffold work at the Project Site. (HCC 56.1 Stmt. ¶ 44; Accredited Counter 56.1 Stmt. ¶ 44; Southwest Marine Counter 56.1 Stmt. ¶ 43). These allegations, and the third-party complaints, each of which allege Republic's

actions were a proximate cause of Ordonez's injuries, (*See* ICL Third-Party Compl. ¶¶ 16, 19; Mega Third-Party Compl. ¶ 8; Celtic Third-Party Compl. ¶ 8), trigger the obligations of Southwest Marine to Mega under the Southwest Marine Policy. *See, e.g.*, *Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co.*, No. 22-CV-1590, 2024 WL 1195401, at *15 (S.D.N.Y. Mar. 19, 2024) (finding duty to defend triggered by allegations in third-party complaint) (collecting cases).

Southwest Marine's arguments in opposition are without merit.  First, it argues that Ordonez's injuries took place after Republic had completed the installation of the scaffolding, and therefore, Mega was no longer an additional insured at the time of the accident.  (Southwest Marine Opp'n to HCC & Mem. of Law at 18–19).  But the fact that the accident took place post-installation does not eliminate the reasonable possibility that the scaffolding had some role in causing the injuries.  Next, Southwest Marine attempts to shift blame away from Republic, arguing that deposition testimony establishes that an employee of White Star removed expansion screws and brackets from the scaffolding the day before Ordonez's accident, and that any debris that Ordonez may have tripped on was caused by his own work.  (*Id.*).  Again, the fact that someone other than Republic is ultimately held responsible—either at summary judgment or at trial—for the injuries does not eliminate the reasonable possibility that Republic has responsibility.  And where there is reasonable possibility of responsibility for bodily injury, under the clear terms of the Southwest Marine Policy, Southwest Marine has a duty to defend Mega.

To be sure, "[i]f there is no legal or factual circumstance that could trigger the duty to indemnify against a claim, then there is no duty to defend against it." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004).  And "an

insurer may withdraw from an ongoing defense if it becomes clear that the claim is wholly outside the indemnification agreement." *Id.*  But "where the evidence offered does not allow a court to eliminate the possibility that the insured's conduct falls within coverage of the policy, the insurer is not relieved of its duty to defend." *Id.* at 148 (quotations omitted).

Deposition testimony relating to who caused the scaffolding where Ordonez fell to be unsafe, which Southwest Marine argues shows White Star or Ordonez himself caused the injuries, does not eliminate the possibility of Republic's liability, particularly since there can be multiple proximate causes for an injury.  *E.g.*, *Liberty Mut. Ins. Corp.*, 505 F. Supp. 3d at 272 (finding duty to defend where there was a question of fact as to which party proximately caused the accident), *partial reconsideration granted on other grounds*, 590 F. Supp. 3d 597 (2022); *Travelers Indem. Co. v. Accredited Sur. & Cas. Co.*, No. 21-CV-03412, 2022 WL 16722107, at *6–*7 (S.D.N.Y. Nov. 4, 2022) (finding duty to defend notwithstanding argument that third party was responsible for injury, because proximate cause need not be sole or exclusive).  HCC is therefore entitled to a declaration that Southwest Marine is obligated to defend Mega in the underlying lawsuit.  *E.g.*, *U.S. Specialty Ins. Co. v. Massachusetts Bay Ins. Co.*, No. 21-CV-10590, 2023 WL 6162409, at *8 (S.D.N.Y. Sept. 21, 2023).

HCC also seeks a declaration that it may withdraw its defense of Mega because Accredited and Southwest Marine's policies are primary coverage to Mega, and HCC's policy is excess coverage.  (HCC Mem. of Law at 12–13, 18).  And HCC further seeks a declaration that Defendants must reimburse HCC for the costs of defending Mega. (*Id.* at 18).

Accredited concedes that if "th[e] Court determines both Celtic and Republic owe additional insured coverage to Mega, then the coverage obligations would be equally shared [between Accredited and Southwest Marine]" because both policies "consistently and independently act[] as primary coverage for Mega." (Accredited Opp'n to HCC & Mem. of Law at 14–15). Southwest Marine does not address HCC's argument in its opposition, (*See* Southwest Marine Opp'n to HCC & Mem. of Law at 17–20), and elsewhere only argues that the Court cannot determine priority of coverage because the Court does not have all the insurance policies issued. (Southwest Marine Counter Mem. of Law in Supp. of Mot. for Summ. J. dated Aug. 28, 2023 ("Southwest Marine Counter"), Dkt. No. 51 at 5–6). Of course, this argument makes no sense, since the Accredited and Southwest Marine Policies are before the Court. The Court has found that Mega is an additional insured on Accredited and Southwest Marine's policies, and the language of both policies clearly provides primary coverage for an additional insured. (HCC 56.1 Stmt. ¶¶ 56, 62; Accredited Counter 56.1 Stmt. ¶¶ 56, 62; Southwest Marine Counter 56.1 Stmt. ¶¶ 55, 61; Accredited Policy at ASCI000101; Southwest Marine Policy at SWM0067). And HCC's Policy clearly states that if there are any other policies providing primary coverage to Mega, then its policy only provides excess coverage. (HCC 56.1 Stmt. ¶ 65; Accredited Counter 56.1 Stmt. ¶ 65; Southwest Marine Counter 56.1 Stmt. ¶ 64).

HCC's Policy also provides that where its policy is in excess, it has no duty to defend Mega. (HCC 56.1 Stmt. ¶ 65; Accredited Counter 56.1 Stmt. ¶ 65; Southwest Marine Counter 56.1 ¶ 64). Because the Court has determined that two other insurers had a duty to defend Mega, HCC did not (and does not) have a duty to defend Mega. HCC may withdraw its defense in the underlying action. *E.g., Peleus Ins. Co. v. Atl.*

*State Dev. Corp.*, 587 F. Supp. 3d 7, 23 (S.D.N.Y. 2022) ("Peleus therefore has no duty to defend or indemnify Atlantic in the New York case and may withdraw its defense in that case.").

"New York courts have carved out a narrow exception to the general 'American' rule that a prevailing party cannot recover attorneys' fees. Under this exception, an insured who prevails in a declaratory action brought by an insurance company seeking to deny a duty to defend and indemnify is allowed to recover fees expended in defending against that action." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 110 (2d Cir. 2004) (quotations omitted).  Accredited and Southwest Marine failed to defend Mega as their policies required.  As a consequence, they must reimburse HCC for reasonable attorney's fees and costs incurred in its defense of Mega in the underlying action, along with pre-judgment interest.  *See Turner Const. Co. v. Am. Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) (finding plaintiff was an additional insured, that defendant had a duty to defend, and therefore, plaintiff was entitled to reimbursement for reasonable attorneys' fees and costs and pre-judgment interest), *aff'd sub nom.*, *Turner Const. Co. v. Kemper Ins. Co.*, 341 F. App'x 684, 686 (2d Cir. 2009).

## II.   Accredited's Motion for Summary Judgment

Accredited moves for summary judgment on its cross-claim, seeking a declaration that Southwest Marine has a duty to defend ICL and Mega.  (*See* Accredited Answer at 13–14; Accredited Opp'n to HCC & Mem. of Law at 1 (stating the memorandum is in support of "its motion for summary judgment on its crossclaim . . . for a declaration that Southwest has a duty to defend"); *see also* Reply Mem. of Law. in Supp. of Accredited's Mot. for Summ. J. ("Accredited Reply"), Dkt. No. 50 at 3 ("the

issue . . . is whether the Underlying Action triggers Southwest's duty to defend Houston's insureds in that litigation.")).  Accredited's motion is resolved by the Court's resolution of HCC's motion seeking the same relief, and the Court denies the motion as moot.

To the extent that Accredited's motion seeks a declaration that Southwest Marine has a duty to defend Mega, that motion is denied for the same reasons.  As for Accredited's claim that Southwest Marine had a duty to defend ICL, the reasons that HCC is not entitled to bring suit on behalf of ICL, *supra* at 14–16, apply with equal force here, and that motion is likewise denied.[4]

III.    Southwest Marine's Motion for Summary Judgment

Southwest Marine also moves for summary judgment, seeking a declaration that it had no duty to defend or indemnify Mega or ICL as additional insureds in the underlying action.  (Southwest Marine Opp'n to HCC & Mem. of Law at 1, 17–20).  As discussed, any claims with respect to ICL are dismissed.  The Court has determined that Mega is an additional insured under Southwest Marine's policy, and that Southwest Marine has a duty to defend Mega.  *See supra* at 18–22.  That necessarily results in the denial of the cross-motion for summary judgment made by Southwest Marine.[5]

---

[4] Accredited's cross-claim also sought a declaration that Southwest Marine is obligated to indemnify ICL and Mega, and that Southwest Marine's policy is the only, sole and primary coverage without any contribution from Accredited.  (Accredited Answer at 13).  If Accredited intended to move on those claims, it failed to make arguments in its memorandum of law, and summary judgment on those claims is denied.

[5] Though Southwest Marine also seeks a declaration that it has no duty to indemnify Mega, (Southwest Marine Opp'n to HCC & Mem. of Law at 17–20), its only argument is that it has no duty to indemnify Mega because Mega is not an additional insured.  (*Id.*).  The Court concluded that Mega was an additional insured, *supra* at 22.  Therefore, summary judgment is denied on this claim.

CONCLUSION

For the reasons explained above, HCC's motion for summary judgment (Dkt. No. 28) is granted in part, Accredited's motion (Dkt. No. 34) is denied, and Southwest Marine's motion (Dkt. No. 39) is denied.  The Court finds that HCC is entitled to a declaration that: (1) Mega is an additional insured under both Accredited and Southwest Marine's policies; (2) Accredited and Southwest Marine both have a duty to defend Mega in the underlying litigation; (3) Accredited and Southwest Marine's policies are primary, and HCC's policy is excess coverage; (4) HCC has no duty to defend Mega in the underlying action and may withdraw its defense; and (5) Accredited and Southwest Marine must reimburse HCC for reasonably attorney's fees and costs with interest.

HCC is ordered to show cause by **October 16, 2024**, as to why this Court should hold a trial on its remaining claims against Defendants, in light of the State Court Declaratory Judgment Action, where HCC filed third-party complaints against Accredited and Southwest Marine and why the claims should not be dismissed on *Brillhart/Wilton* abstention grounds.

SO ORDERED.

*/s/Sanket J. Bulsara*   September 25, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

25